# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERRY MACKEY,<br><br>            Plaintiff,<br><br>    v.<br><br>RUDD, et al.,<br><br>            Defendants. | Case No.: 1:24-cv-00648-BAM (PC)<br><br>ORDER GRANTING MOTION TO AMEND COMPLAINT AND DIRECTING LODGED SECOND AMENDED COMPLAINT BE FILED<br><br>FINDINGS AND RECOMMENDATIONS REGARDING DISMISSAL OF CERTAIN CLAIMS<br><br>(ECF No. 11)<br><br>**FOURTEEN (14) DAY DEADLINE** |

Plaintiff Terry Mackey ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action under 42 U.S.C. § 1983. The Court screened Plaintiff's complaint, and Plaintiff was granted leave to amend. Plaintiff filed a first amended complaint. (ECF No. 10.) Before the Court could screen the first amended complaint, Plaintiff lodged a second amended complaint. (ECF No. 11.)

The Court will construe the lodged second amended complaint as a motion to amend, pursuant to Federal Rule of Civil Procedure 15(a).

**I.    Motion to Amend**

Rule 15(a) provides that a court "should freely give leave [to amend] when justice so

1

requires." Fed. R. Civ. P. 15(a)(2). Under Rule 15(a) of the Federal Rules of Civil Procedure, a party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served. Otherwise, a party may amend only by leave of the court or by written consent of the adverse party, and leave shall be freely given when justice so requires. Fed. R. Civ. P. 15(a). "Rule 15(a) is very liberal and leave to amend shall be freely given when justice so requires." *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 951 (9th Cir. 2006) (citation and quotation omitted). However, courts "need not grant leave to amend where the amendment: (1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile." *Id*.

In considering the relevant factors, the Court finds no evidence of prejudice, bad faith, undue delay in litigation, or futility. Plaintiff's first amended complaint has not yet been screened, and no defendants have been served or have appeared in this action. Accordingly, Plaintiff's lodged second amended complaint, construed as a motion to amend, shall be granted.

**II.     Screening Requirement and Standard**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. §§ 1915A(b).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable

for the misconduct alleged. *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss*, 572 F.3d at 969.

### III. Plaintiff's Allegations

Plaintiff is currently incarcerated at Sierra Conservation Center in Jamestown, California where the events in the complaint are alleged to have occurred. Plaintiff names as defendants: (1) C. Rudd, correctional officer (2) K. Ram, correctional officer, (3) M. Mix, correctional sergeant. Plaintiff alleges as follows.

In claim 1, Plaintiff alleges a violation of the Eighth Amendment for cruel and unusual punishment. On 4/19/24, Plaintiff was tortured by being handcuffed excessively tight and locked in a 2 ½ by 2 ½ cage by C. Rudd and K. Ram. They ignored multiple complaints of pain and tightness of the cuffs and request for the cuffs to be loosened. C. Rudd intentionally tightened the handcuffs. He tightened the left cuff until it could no longer click. Prior to being cuffed, Plaintiff was not combative or taking an aggressive stance towards the officers. After being cuffed, Plaintiff was placed in a holding cage when Plaintiff was not a threat to officers or himself.

While still in the holding cage, Plaintiff tried to get the attention of multiple officers by yelling their names for 10-20 minutes. Plaintiff got the attention of correctional officer Walker who informed Sgt. Mix that Plaintiff was left in a holding cage. About 5-10 minutes later, Sgt. Mix responded. Plaintiff was in visible pain and Plaintiff said the cuffs were too tight and needed to be removed. Sgt. Mix said that Plaintiff would be escorted to Plaintiff's cell, and the cuffs would not be removed until then. Plaintiff told Sgt. Mix that the cuffs were digging into Plaintiff's wrist, and it hurt too much to wait. He again told Plaintiff that the cuffs would not be removed until Plaintiff got to Plaintiff's cell. Plaintiff again told Sgt. Mix that Plaintiff's wrist hurt and his hands were numb and did not have blood circulating to his hands. Sgt. Mix again told Plaintiff that the cuffs were not going to come off now. Plaintiff said his hands were tingling, he can't wait and needed to go to medical. Sgt. Mix said that medical would meet Plaintiff at his cell, and the cuffs would be removed then. Plaintiff said that the cuffs do not need to be removed

now, but just loosen them.  Mix again refused, said that he had a meeting, and left Plaintiff to suffer in severe pain.

Plaintiff then got the attention of an inmate clerk who alerted the lieutenant.  The lieutenant responded about 5-10 minutes later and ordered the cuffs removed.  Correctional officer Pastor had trouble removing the cuffs because they were so tight.

On 7/10/24, Plaintiff was sent to an outside hospital for an NCS/EMG and was diagnosed with left radial wrist and thumb pain and left thumb paresthesia.  Plaintiff has decreased sensation in the "left thumb stocking distribution and tenderness at the left radial wrist" and thumb base.  Plaintiff now has nerve damage in his left hand and wrist. The NCS also showed "borderline prolonged distal latencies."  On 9/30/24, Plaintiff was seen by a neurologist who diagnosed Plaintiff with radial and median nerve damage due to the excessively tight handcuffs.

As remedies, Plaintiff seeks compensatory and punitive damages.

**IV.     Discussion**

**Eight Amendment**

**1.   Excessive Force**

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006). The unnecessary and wanton infliction of pain violates the Cruel and Unusual Punishments Clause of the Eighth Amendment. *Hudson v McMillian*, 503 U.S. 1, 5 (1992) (citations omitted). Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety. *Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994) (quotations omitted).

"[W]henever prison officials stand accused of using excessive physical force in violation of the [Eighth Amendment], the core judicial inquiry is...whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7. Relevant factors for this consideration include "the extent of injury... [,] the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the

4

severity of a forceful response.' " *Id.* (quoting *Whitley v. Albers*, 475 U.S. 1078, 1085 (1986) ). Finally, because the use of force relates to the prison's legitimate penological interest in maintaining security and order, the court must be deferential to the conduct of prison officials. *See Whitley*, 475 U.S. at 321–22.  Not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Id.* at 9. De minimis uses of physical force do not violate the constitution provided that the use of force is not of a sort "repugnant to the conscience of mankind." *Whitley v. Albers*, 475 U.S. 312, 327 (1986) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

Overly tight handcuffs sometimes can establish an Eighth Amendment violation, and sometimes they do not. *See Guerrero v. Rivera*, No. EDCV 13-0092-JGB (JPR), 2013 WL 878285, at *2 (C.D. Cal. Mar. 8, 2013) (finding that plaintiff had failed to state a cognizable excessive force claim regarding overly tight handcuffs where the named defendants had nothing to do with the handcuffing, that Plaintiff did not allege that he made more than one request to any defendant to loosen the cuffs, or that any defendant was present for more than a few moments and was able to observe the effect the handcuffs had on the plaintiff); *Gregory v. Adams*, No. CIV S-05-1393 FCD EFB P, 2008 WL 486013, at *5 (E.D. Cal. Feb. 19, 2008) (holding that triable issue existed as to whether officer who did not personally handcuff plaintiff nonetheless used excessive force in ignoring plaintiff's repeated assertions of pain and refusing to loosen cuffs for more than five hours); *see Salazar v. L.A. Cnty. Sheriff's Dep't*, No. CV 17-07686-ODW (DFM), 2021 WL 3438653, at *2 (C.D. Cal. July 6, 2021) (rejecting without leave to amend excessive-force claim because plaintiff did not allege facts showing how handcuffs caused him pain or injury or how he communicated that to defendants), accepted by 2021 WL 4338946 (C.D. Cal. Sept. 23, 2021); *Johnson v. Frauenheim*, No. 1:18-cv-01477-AWI-BAM (PC), 2021 WL 5236498, at *8 (E.D. Cal. Nov. 10, 2021) (rejecting without leave to amend excessive-force claim because plaintiff did not allege that he asked defendant "more than once to loosen" handcuffs or that defendant "otherwise knew that the handcuffs were too tight and were causing [p]laintiff to suffer severe pain"), accepted by 2021 WL 5982293 (E.D. Cal. Dec. 17, 2021); *Bibbs v. Meiser*, No. SACV 22 0202 SPG JPR, 2022 WL 2528611, at *3 (C.D. Cal. July 6, 2022) (a constitutional violation could only rest on repeated ignored requests.); *O'Brien v. Reed*, No. 1:22-CV-00780 AWI BAM

5

1  PC, 2022 WL 18027819, at *5 (E.D. Cal. Dec. 30, 2022), report and recommendation adopted,
2  No. 1:22-CV-00780 AWI BAM PC, 2023 WL 2696662 (E.D. Cal. Mar. 29, 2023) (stating a
3  cognizable claim against Defendants for tight handcuffs during the escort during which Plaintiff
4  said at least four times that the cuffs were tight.)

5        Whether tight handcuffs can constitute excessive force is fact specific.  Usually, viable
6  claims involve extremely tight cuffs and resulting injury.  Liberally construing the allegations,
7  Plaintiff states a cognizable claim against Defendants C. Rudd and K. Ram.

### 2. Conditions of Confinement

9        Although the Constitution "'does not mandate comfortable prisons,'" *Wilson v. Seiter,* 501
10 U.S. 294, 298 (1991) (quoting *Rhodes v. Chapman,* 452 U.S. 337, 349), "inmates are entitled to
11 reasonably adequate sanitation, personal hygiene, and laundry privileges, particularly over a
12 lengthy course of time." *Howard v. Adkison,* 887 F.2d 134, 137 (9th Cir. 1989).  Some conditions
13 of confinement may establish an Eighth Amendment violation "in combination" when each alone
14 would not suffice, but only when they have a combined effect that produces the deprivation of a
15 single, identifiable human need such as food, warmth, or exercise—for example, a low cell
16 temperature at night combined with a failure to issue blankets.  *Wilson,* 501 U.S. at 304–05
17 (comparing *Spain v. Procunier,* 600 F.2d 189, 199 (9th Cir. 1979) (outdoor exercise required when
18 prisoners are confined in small cells almost 24 hours per day), with *Clay v. Miller,* 626 F.2d 345,
19 347 (4th Cir. 1980) (outdoor exercise not required when prisoners had access to dayroom 18 hours
20 per day)).  Temporary unconstitutional conditions of confinement do not necessarily rise to the
21 level of constitutional violations.  *See Anderson v. Cty. of Kern,* 45 F.3d 1310, 1315 (9th Cir.),
22 *opinion amended on denial of reh'g,* 75 F.3d 448 (9th Cir. 1995), *abrogated on other grounds by*
23 *Sandin,* 515 U.S. 472 (in evaluating challenges to conditions of confinement, length of time the
24 prisoner must go without basic human needs may be considered)).

25       Plaintiff fails to state a conditions of confinement claim.  To the extent Plaintiff alleges he
26 claim for being placed in a cage for a short period of time, Plaintiff has not alleged a sufficiently
27 serious condition violative of the Eighth Amendment by these temporary conditions.  *Anderson,*
28 45 F.3d at 1315 (no constitutional violation for placement in safety cages where the sanitary

6

limitations imposed upon them were more than temporary and where inmate was in danger of self-harm).

### 3. **Medical Care**

It is unclear is Plaintiff is seeking to allege a claim for denial of medical care. The two-part test for deliberate indifference requires the plaintiff to show (1) " 'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,' " and (2) "the defendant's response to the need was deliberately indifferent." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).

A serious medical need is shown by demonstrating that "failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Id.* A "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Liberally construing the allegations, Plaintiff had a serious medical need because he was suffering pain from overly tight handcuffs.

In addition, the defendant's response to that serious medical need must be deliberately indifferent. Under the deliberate indifference standard, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.  A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. *See Farmer*, 511 U.S. at 837. The official must both know of "facts from which the inference could be drawn" that an excessive risk of harm exists, and he must actually draw that inference. *Id.* If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk. *Gibson v. County of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002).

Plaintiff does not state a claim for deliberate indifference against any defendant because the allegations are too vague and conclusory. It is unclear who did what and who knew what about Plaintiff's injuries. It is unclear if Plaintiff told each of the defendants that he needed medical attention or that such attention was obvious from his injuries. Sgt. Mix told Plaintiff that

he would be met at his cell by medical when Plaintiff requested medical attention. As informed in the original screening order, Plaintiff must state factual support as to the identity of each defendant and what that defendant did or did not do which was deliberately indifferent to Plaintiff's rights. Plaintiff has been unable to cure this deficiency.

### 4. <u>Failure to Protect</u>

For a claim (like the one here) based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Farmer*, 511 U.S. at 834. Second, the prison official must subjectively have a sufficiently culpable state of mind, "one of deliberate indifference to inmate health or safety." *Id.* (internal quotation marks and citations omitted). The official is not liable under the Eighth Amendment unless he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. Then, the official must fail to take reasonable measures to abate the substantial risk of serious harm. *Id.* at 847.

Liberally construing the allegations, Plaintiff states a cognizable claim against Sgt. Mix for failing to loosen/have someone loosen the tight handcuffs.

**State Law Claims**

California's Government Claims Act requires that a claim against the State or its employees "relating to a cause of action for death or for injury to person" be presented to the Department of General Services' Government Claims Program no more than six months after the cause of action accrues. Cal. Gov't Code §§ 905.2, 910, 911.2, 945.4, 950–950.2. Presentation of a written claim, and action on or rejection of the claim, are conditions precedent to suit. *State v. Super. Ct. of Kings Cty. (Bodde)*, 32 Cal. 4th 1234, 1245 (Cal. 2004); *Mangold v. Cal. Pub. Utils. Comm'n*, 67 F.3d 1470, 1477 (9th Cir. 1995). To state a tort claim against a public entity or employee, a plaintiff must allege compliance with the Government Claims Act. *Bodde*, 32 Cal. 4th at 1245; *Mangold*, 67 F.3d at 1477; *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 627 (9th Cir. 1988). Liberally construing the allegations, Plaintiff alleges he comply with the Government Claims Act.

1    Plaintiff asserts state law claims for battery and negligent and intentional infliction of
2 emotional distress.

### 1. Battery

Under California law, "[a] battery is any willful and unlawful use of force or violence upon the person of another." Cal. Penal Code § 242. To allege a cognizable claim for battery, a plaintiff must allege "that (1) the defendant intentionally did an act that resulted in harmful or offensive contact with the plaintiff's person, (2) the plaintiff did not consent to the contact, and (3) the contact caused injury, damage, loss, or harm to the plaintiff." *Tekle v. United States*, 511 F.3d 839, 855 (9th Cir. 2007) (citation omitted).

At the pleading stage, Plaintiff states a cognizable claim for battery against Defendants C. Rudd and K. Ram.

### 2. Negligent Infliction of Emotional Distress

Negligent infliction of emotional distress is not an independent tort in California, but is regarded simply as the tort of negligence. *Klein v. Children's Hosp. Med. Ctr.*, 46 Cal.App.4th 889, 894 (1996). "The elements of a negligence cause of action are: (1) a legal duty to use due care; (2) a breach of that duty; (3) the breach was the proximate or legal cause of the resulting injury; and (4) actual loss or damage resulting from the breach of the duty of care." *Brown v. Ransweiler*, 171 Cal.App.4th 516, 534 (2009) (citing *Ladd v. County of San Mateo*, 12 Cal.4th 913, 917 (1996)). Since California does not recognize a separate tort for negligent infliction of emotional distress, a plaintiff may seek damages for emotional injury caused by a defendant's negligence. *See Flores v. EMC Mortg. Co.*, 997 F.Supp.2d 1088, 1125 (E.D. Cal. 2014*); Fiorito v. Anderson*, No. 5:18-CV-00506 JFW KES, 2019 WL 1602176, at *4 (C.D. Cal. Apr. 10, 2019), report and recommendation adopted, No. 5:18-CV-00506 JFW KES, 2019 WL 1596653 (C.D. Cal. Apr. 15, 2019).  Liberally construing the allegations, Plaintiff states a claim for negligence.

### 3. Intentional Infliction of Emotional Distress

"In order to establish a claim for intentional infliction of emotional distress under California law, [plaintiff must] show (1) that the defendant's conduct was outrageous, (2) that the defendant intended to cause or recklessly disregarded the probability of causing emotional

9

1  distress, and (3) that the plaintiff's severe emotional suffering was (4) actually and proximately
2  caused by defendant's conduct." *Austin v. Terhune*, 367 F.3d 1167, 1172 (9th Cir. 2004) (internal
3  citation omitted). A defendant's conduct is considered to be outrageous if it is "so extreme as to
4  exceed all bounds of that usually tolerated in a civilized community." *Hughes v. Pair*, 46 Cal. 4th
5  1035, 1050-51(1993) (internal quotation marks and citations omitted). Liability for intentional
6  infliction of emotional distress does not extend to "mere insults, indignities, threats, annoyances,
7  petty oppressions, or other trivialities." *Id.* at 1051 (internal quotations marks and citations
8  omitted). While showing "malicious or evil purpose is not essential to liability" for intentional
9  infliction of emotional distress, *Crouch v. Trinity Christian Ctr. of Santa Ana, Inc.,* 39 Cal. App.
10 5th 995, 1007 (2019) (internal quotation marks and citations omitted), a plaintiff must plead facts
11 that demonstrate the defendant intended to cause, or was recklessly indifferent to causing,
12 plaintiff " 'emotional distress of such substantial quality or enduring quality that no reasonable
13 [person] in civilized society should be expected to endure it,' " *The Kind & Compassionate v.*
14 *City of Long Beach*, 2 Cal. App. 5th 116, 130 (2016) (quoting *Hughes*, 46 Cal. 4th at 1051; some
15 internal quotation marks omitted).

16 Plaintiff fails to show that any Defendant's conduct rises to the level of outrageousness or
17 that they intended to cause, or was reckless in causing, Plaintiff severe emotional suffering. Nor
18 does plaintiff show he did, in fact, suffer severe emotional distress. Plaintiff's conclusory
19 allegations that he did suffer "pain and suffering" does nothing more than restate the legal
20 standard. Plaintiff's allegations do not support a claim of intentional infliction of emotional
21 distress.

22 **V.     Conclusion and Recommendation**

23 The Court directs the Clerk of Court to file the lodged second amended complaint. (ECF
24 No. 11.)

25 Based on the above, the Court finds that Plaintiff's second amended complaint states
26 cognizable claims against (1) Defendants C. Rudd and K. Ram for excessive force in violation of
27 the Eighth Amendment, (2) against M. Mix for failure to prevent harm in violation of the Eighth
28 Amendment; (3) against C. Rudd and K. Ram for a state law claim for battery, and (4) against C.

1  Rudd, K. Ram, and M. Mix for a state law claim for negligence. However, Plaintiff's complaint
2  fails to state any other cognizable claims for relief against any other defendant.  Despite being
3  provided the pleading and legal standards, Plaintiff has been unable to cure the identified
4  deficiencies and further leave to amend is not warranted. *Lopez v. Smith*, 203 F.3d 1122, 1130
5  (9th Cir. 2000).

6  Accordingly, the Clerk of the Court is DIRECTED to randomly assign a District Judge to
7  this action.

8  Further, is HEREBY RECOMMENDED that:

9  1. This action proceed on Plaintiff's second amended complaint, lodged on November
10     14, 2024 (ECF No. 11), against (1) Defendants C. Rudd and K. Ram for excessive
11     force in violation of the Eighth Amendment, (2) against M. Mix for failure to prevent
12     harm in violation of the Eighth Amendment; (3) against C. Rudd and K. Ram for a
13     state law claim for battery, and (4) against C. Rudd, K. Ram, and M. Mix for a state
14     law claim for negligence,
15  2. All other claims be dismissed based on Plaintiff's failure to state claims upon which
16     relief may be granted.

17  These Findings and Recommendations will be submitted to the United States District
18  Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1).  Within
19  **fourteen (14) days** after being served with these Findings and Recommendations, the parties may
20  file written objections with the court.  The document should be captioned "Objections to
21  Magistrate Judge's Findings and Recommendations." **Objections, if any, shall not exceed**
22  **fifteen (15) pages or include exhibits.  Exhibits may be referenced by document and page**
23  **number if already in the record before the Court.  Any pages filed in excess of the 15-page**
24  **limit may not be considered.** The parties are advised that failure to file objections within the
25  ///
26  ///
27  ///
28  ///

specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838–39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **November 15, 2024**          /s/ Barbara A. McAuliffe          
                                                  UNITED STATES MAGISTRATE JUDGE