# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

TERRY MACKEY,

    Plaintiff,

  v.

RUDD, *et al.*,

    Defendants.

Case No.  1:24-cv-00648-JLT-BAM (PC)

FINDINGS AND RECOMMENDATIONS REGARDING PLAINTIFF'S MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT

(ECF Nos. 40, 50)

**FOURTEEN (14) DAY DEADLINE**

## I.  Introduction

Plaintiff Terry Mackey ("Plaintiff") is a former state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983.  This action proceeds on Plaintiff's second amended complaint against: (1) Defendants Rudd and Ram for excessive force in violation of the Eighth Amendment; (2) Defendant Mix for failure to prevent harm in violation of the Eighth Amendment; (3) Defendants Rudd and Ram for a state law claim for battery; and (4) Defendants Rudd, Ram, and Mix for a state law claim for negligence.

On February 20, 2026, Plaintiff filed a motion for leave to file a third amended complaint and lodged his proposed third amended complaint.  (ECF Nos. 39, 40.)  Plaintiff also lodged a nearly identical proposed third amended complaint on April 6, 2026, which includes only minor differences in the caption.  (*See* ECF No. 50.)  Defendants filed an opposition on April 14, 2026, (ECF No. 55), and Plaintiff replied on April 27, 2026, (ECF No. 60).  The motion is deemed

1

submitted.  Local Rule 230(l).

For the reasons that follow, the Court will recommend that Plaintiff's motion for leave to file a third amended complaint be denied.

**II.    Background**

Plaintiff initiated this action on June 3, 2024, against Correctional Officers Rudd and Ram, Sergeant Mix, and Associate Warden J. Dewoody.  Plaintiff alleged claims for retaliation in violation of the First Amendment, excessive force, conditions of confinement, and failure to protect in violation of the Eighth Amendment, equal protection in violation of the Fourteenth Amendment, and state law claims.  (ECF No. 1.)  The Court screened the complaint and granted Plaintiff leave to amend.  (ECF No. 9.)

Plaintiff filed a first amended complaint on October 25, 2024.  (ECF No. 10.)  Before the Court could screen the first amended complaint, Plaintiff lodged a second amended complaint on November 14, 2024.  (ECF No. 11.)  The Court construed the lodged second amended complaint as a motion to amend and granted Plaintiff leave to amend.  (ECF No. 13.)  On November 15, 2024, Plaintiff's second amended complaint was filed on the docket.  (ECF No. 14.)

In the second amended complaint, Plaintiff named Correctional Officers Rudd and Ram and Sergeant Mix. Plaintiff alleged that on April 19, 2024, he was tortured by being handcuffed excessively tight and locked in a holding cage.  Plaintiff asserted claims for excessive force, conditions of confinement, medical care, and failure to protect in violation of the Eighth Amendment, along with state law claims for battery and negligent and intentional infliction of emotional distress.  (ECF No. 14.)

On November 15, 2024, the Court screened the second amended complaint and issued findings and recommendations that this action proceed against: (1) Defendants C. Rudd and K. Ram for excessive force in violation of the Eighth Amendment, (2) against M. Mix for failure to prevent harm in violation of the Eighth Amendment; (3) against C. Rudd and K. Ram for a state law claim for battery, and (4) against C. Rudd, K. Ram, and M. Mix for a state law claim for negligence, and that all other claims be dismissed based on Plaintiff's failure to state claims upon which relief may be granted.  (ECF No. 13.)  Plaintiff objected to the Court's findings and

2

recommendations, and also requested to amend his complaint to file a third amended complaint. (ECF Nos. 15, 16.)  On December 23, 2024, the District Judge adopted the findings and recommendations in full, and also denied Plaintiff's motion for leave to file a third amended complaint.  (ECF No. 17.)

On December 26, 2024, the Court directed service of the second amended complaint. (ECF No. 18.)  Defendants Mix, Ram, and Rudd answered the complaint on March 28, 2025. (ECF No. 25.)  The Court referred the case to post-screening ADR (Alternative Dispute Resolution) but it did not settle.  (ECF Nos. 26, 28.)

On June 10, 2025, the Court issued a Discovery and Scheduling Order, which set the deadline for all stipulated amendments or motions to amend as September 10, 2025, and the deadline for completion of all discovery, including filing all motions to compel discovery as February 10, 2026.  (ECF No. 30.)  On January 21, 2026, the Court extended the deadline for completion of all discovery, including filing all motions to compel discovery, to April 13, 2026, and the deadline for filing all dispositive motions (other than a motion for summary judgment for failure to exhaust) to June 22, 2026.  (ECF No. 37.)

Plaintiff filed the instant motion to amend on February 20, 2026, (ECF No. 40), and lodged his second proposed third amended complaint on April 6, 2026, (ECF No. 50).  Plaintiff's proposed third amended complaint seeks to add the following defendants:  (1) Dr. Steve Smith, a CDCR physician/medical provider; (2) Nurse Practitioner Aarti Joseph, a CDCR medical provider; (3) California Correctional Health Care Services ("CCHCS"), the agency responsible for providing medical care to CDCR inmates; and (4) Doe Medical Providers 1-10, physicians, midlevel providers, nurses, pharmacy and utilization-management reviewers, and/or other medical decision makers; and (5) Does 11-20, staff members, supervisors, and/or policymakers. He includes additional allegations regarding ongoing nerve symptoms and medical minimization after the handcuffing incident, denial of neuropathic medication, continued injury after release, holding cell log irregularities and inconsistent officer signatures, and CDCR policy violations regarding restraints and holding cell use.  He adds claims for supervisory liability under section 1983, deliberate indifference to serious medical needs in violation of the Eighth Amendment, and

state law claims for violation of the Bane Act and intentional infliction of emotional distress. He also seeks declaratory and injunctive relief against CCHCS only. (*See generally* ECF No. 50.)

### III.   Legal Standards

#### A.   Federal Rule of Civil Procedure 16

Plaintiff's motion for leave to amend comes after the expiration of the relevant Discovery and Scheduling Order deadline for amendment to the pleadings. Because Plaintiff's motion was filed after the amendment deadline, the Court must apply the standard for amending a scheduling order under Federal Rule of Civil Procedure 16. *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000) (finding district court correctly addressed motion for leave to amend under Rule 16 because it had issued a pretrial scheduling order that established a timetable for amending the pleadings and the motion was filed after the deadline had expired); *Jackson v. Laureate, Inc.*, 186 F.R.D. 605, 607 (E.D. Cal. June 16, 1999) ("[O]nce the district court has filed a pretrial scheduling order pursuant to Rule 16 which establishes a timetable for amending pleadings, a motion seeking to amend pleadings is governed first by Rule 16(b), and only secondarily by Rule 15(a).").

District courts enter scheduling orders in actions to "limit the time to join other parties, amend the pleadings, complete discovery, and file motions." Fed. R. Civ. P. 16(b)(3)(A). Once entered, a scheduling order "controls the course of the action unless the court modifies it." Fed. R. Civ. P. 16(d). Scheduling orders are intended to alleviate case management problems, *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir. 1992), and are "the heart of case management," *Koplove v. Ford Motor Co.*, 795 F.2d 15, 18 (3rd Cir. 1986). Accordingly, pursuant to Federal Rule of Civil Procedure 16(b), a scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4); *see also Green Aire for Air Conditioning W.L.L. v. Salem*, No. 1:18-cv-00873-LJO-SKO, 2020 WL 58279, at *3 (E.D. Cal. Jan. 6, 2020) ("Requests to modify a scheduling order are governed by Rule 16(b)(4) of the Federal Rules of Civil Procedure, which provides that a court may modify a scheduling order 'only for good cause.'").

///

As the Ninth Circuit has explained,

> In these days of heavy caseloads, trial courts in both the federal and state systems routinely set schedules and establish deadlines to foster the efficient treatment and resolution of cases. Those efforts will be successful only if the deadlines are taken seriously by the parties, and the best way to encourage that is to enforce the deadlines. Parties must understand that they will pay a price for failure to comply strictly with the scheduling and other orders, and that failure to do so may properly support severe sanctions and exclusions of evidence.

*Wong v. Regents of the Univ. of Cal.*, 410 F.3d 1052, 1060 (9th Cir. 2005).

The party seeking to modify a scheduling order bears the burden of demonstrating good cause. *Handel v. Rhoe*, No. 14-cv-1930-BAS(JMA), 2015 WL 6127271, at *2 (S.D. Cal. Oct. 16, 2015) (citing *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002); *Johnson*, 975 F.2d at 608-609).  The Court may modify the scheduling order "if it cannot reasonably be met despite the diligence of the party seeking the extension." *Johnson*, 975 F.2d at 609.  If the party was not diligent, then the inquiry should end. *Id.*  If, however, there is good cause to modify the scheduling order pursuant to Rule 16(b), the Court will then turn to Rule 15(a) to determine whether the movant's requested amendment to the pleading should be granted. *Ramos v. FCA US LLC*, No. 1:17-CV-00973, 2019 WL 2106172, at *5 (citing *Jackson*, 186 F.R.D. at 607).

### B.   Federal Rule of Civil Procedure 15(a)

Rule 15(a) provides that a court "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). The United States Supreme Court has stated:

> [i]n the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. —the leave sought should, as the rules require, be "freely given."

*Foman v. Davis*, 371 U.S. 178, 182 (1962). The intent of the rule is to "facilitate decision on the merits, rather than on the pleadings or technicalities." *Chudacoff v. Univ. Med. Center of S. Nev.*, 649 F.3d 1143, 1152 (9th Cir. 2011). Consequently, the "policy of favoring amendments to pleadings should be applied with 'extreme liberality.'" *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981).

Courts consider five factors in determining whether justice requires allowing amendment under Rule 15(a): "bad faith, undue delay, prejudice to the opposing party, futility of amendment,

and whether the plaintiff has previously amended the complaint." *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004) (citation omitted); *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995) (citing *Western Shoshone Nat'l Council v. Molini*, 951 F.2d 200, 204 (9th Cir. 1991)). These factors are not of equal weight as prejudice to the opposing party has long been held to be the most critical factor in determining whether to grant leave to amend. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) ("As this circuit and others have held, it is the consideration of prejudice to the opposing party that carries the greatest weight"); *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990) ("Prejudice to the opposing party is the most important factor."). Absent prejudice, or a strong showing of any of the remaining factors, a presumption exists under Rule 15(a) in favor of granting leave to amend. *Eminence Capital*, 316 F.3d at 1052.

**IV.   Discussion**

    **A. Parties' Positions**

Plaintiff requests leave to file a third amended complaint to "incorporate newly obtained objective medical evidence, confirmed neurological diagnoses, post-release medical findings, and to add responsible medical providers as defendants whose personal involvement and deliberate indifference could not be fully pleaded earlier due to delayed diagnostics, incomplete medical records, and medical minimization." (ECF No. 40 at 2.) He contends that this action arises from an incident on April 19, 2024, in which he was subjected to unnecessary and excessive force by custody defendants, followed by deliberate indifference to serious medical need by both custody and medical defendants. (*Id.*) Plaintiff asserts that since filing his second amended, he has obtained medical evidence that did not previously exist or was not available, including objective diagnostic testing and post-release evaluations. (*Id.*) He now seeks leave to amend "to accurately plead these facts and to name the medical providers whose conduct gives rise to liability under federal and state law." (*Id.*)

Plaintiff argues that he has acted diligently by seeking amendment after obtaining and reviewing the new medical evidence and confirming the identifies and involvement of the medical providers responsible for his care. (ECF No. 40 at 3.) He indicates that discovery is

ongoing, and he has received approximately 70% of discovery, including medical records and diagnostic results that were incomplete or unavailable at time of prior pleadings.  Plaintiff further indicates that depositions have not yet occurred, and no dispositive motions have been filed.

Plaintiff argues that good cause for amendment exists because the proposed third amended complaint is based on newly confirmed medical evidence, including (1) EMG/nerve conduction studies confirming neurological injury; (2) documented thenar eminence muscle atrophy of the left hand; (3) diagnoses of median nerve injury, paresthesia, and mild carpal tunnel syndrome; (4) physical therapy findings showing approximately 30% reduction in left-wrist range of motion compared to right; (5) evidence that prescribed medication, including Gabapentin, was denied as "non-formulary" despite nerve damage; and (6) post-release medical findings confirming persistent and potentially permanent impairment.  (ECF No. 40 at 3-4.)  Plaintiff contends that these facts "materially strengthen causation, damages, and deliberate-indifference allegations." (*Id.* at 4.)  Additionally, Plaintiff claims that the identities and culpable conduct of the medical defendants "were not fully ascertainable until this evidence was obtained and correlated."  (*Id.*)

Plaintiff asserts that Defendants will not suffer undue prejudice because, among other things, the third amended complaint "arises from the same nucleus of operative facts already at issue;" "no new incident, time period, or unrelated theory is introduced," and "discovery remains open and depositions have not occurred."  (ECF No. 40 at 4.)

In opposition, Defendants argue that because the motion to amend was filed nearly seven months after the September 10, 2025 scheduling order deadline, the Court must apply the good cause standard under Rule 16(b)(4) and Plaintiff must show diligence in complying with the scheduling order.  Defendants contend Plaintiff has not demonstrated the requisite diligence under Rule 16(b). Although Plaintiff states that good cause exists because the new facts and defendants could not reasonably have been pleaded earlier, Defendants assert that nothing in the proposed third amended complaint includes new information not previously pleaded in regards to correctional staff placing handcuffs on Plaintiff on April 19, 2024, and the new information Plaintiff states he recently found relates to medical care.  Defendants point out that Plaintiff does not state how he obtained this information, what efforts he took, or when this information was

learned.  Defendants further note that Plaintiff has always had access to his medical records from CDCR.  (ECF No. 55 at 5.)

Defendants also argue that the record does not support a finding that Plaintiff's delay was caused by facts which could not have been reasonably foreseen or anticipated at the time of the scheduling order.  Instead, Defendants assert that the conduct of the doe defendants 1-10 was the subject of the second amended complaint and Plaintiff already attempted to file several of his causes of action which previously did not survive screening.  Defendants reiterate that Plaintiff has had access to medical records since the date of the incident on April 19, 2024, so he has had reason to know of the identities of his doctors and the unnamed medical professionals at CDCR he now seeks to sue. Defendants assert that Plaintiff was aware of his medical treatment on April 19, 2024, the date of the alleged incident, and he has not included any specific information regarding his diligence.  (ECF No. 55 at 5-6.)

Plaintiff replies that his amendment is "based on newly confirmed medical evidence, including a second nerve conduction study diagnosing mild carpal tunnel syndrome, which directly contradicts the prior conclusions of medical staff—including Dr. Smith and Nurse Practitioner Joseph—that nothing was wrong despite repeated complaints and ongoing symptoms."  (ECF NO. 60 at 1-2.)  Plaintiff avers that he recently received the final San Joaquin General Hospital medical records produced by Defendants on April 6, 2026, "which further expose that prior conclusions were based on testing conducted under unreliable conditions, including the facts that Plaintiff's hands were cold at the time of testing."  (*Id.* at 2.)  Plaintiff contends that this is not delay, it is new evidence "revealing a flawed diagnosis and supporting deliberate indifference."  (*Id.*)

Plaintiff argues that he did not always have access to his medical records as he did not have a confirmed diagnosis, a second nerve conduction study, or the complete San Joaquin General Hospital records until April 6, 2026.  (ECF No. 60.)  He asserts that access to incomplete or misleading records is not access to the underlying facts necessary to bring a claim.  Plaintiff contends that he acted promptly after receiving the second nerve conduction study and learning that cold hands can affect a nerve conduction study.

8

Additionally, Plaintiff argues that he could not reasonably have added Dr. Smith and Nurse Practitioner Joseph "prior to obtaining objective confirmation that his injury had been minimized." (ECF No. 60 at 3.) Plaintiff asserts that while incarcerated he reported symptoms consistent with nerve injury, medical staff relied on a nerve conduction study deemed normal, that study was conducted while Plaintiff's hands were cold, a condition that affects reliability, and Plaintiff repeatedly asked Dr. Smith and Nurse Practitioner Joseph but had no ability to obtain a second, independent study. Plaintiff claims that without objective contradiction, he could not distinguish between a mere difference of medical opinion and deliberate indifference. (*Id.*) He asserts that after release, the second nerve conduction study diagnosing carpal tunnel syndrome established that his symptoms were real, the prior normal conclusion was unreliable, and medical providers minimized a legitimate condition. Plaintiff claims he could not allege deliberate indifference until objective proved the prior conclusions were inaccurate.

### B. Analysis

The Court does not find the requisite diligence to support modification of the Discovery and Scheduling Order. Plaintiff has had multiple opportunities to amend his complaint prior to expiration of the relevant amendment deadline. There is no indication as to why Plaintiff's pleading deficiencies could not have been addressed in prior iterations of the complaint. Indeed, Plaintiff does not explain why he could not have included factual allegations regarding his claim of deliberate indifference to medical care or name his medical providers at CDCR prior to expiration of the relevant pleading deadline. Plaintiff also does not explain why he is attempting to reassert other claims that were previously screened out by the Court.

Although Plaintiff argues that he could not have amended his complaint without recently acquired medical records, the records cited by Plaintiff generally speak to alleged damages and his post-release care, not the factual allegations underlying his proposed claims. Plaintiff suggests that without recently acquired medical records he could not distinguish between a mere difference of medical opinion and deliberate indifference. This suggestion is not well taken given Plaintiff's allegations in his second amended complaint that, among other things, he suffers from nerve damage and was seen by a neurologist September 30, 2024, who diagnosed Plaintiff with

radial and median nerve damage due to the excessively tight handcuffs.  (ECF No. 14 at 3, 4-5.)

For these reasons, the Court does not find the requisite diligence and concludes that there is not good cause for modifying the Discovery and Scheduling Order.  *Johnson*, 975 F.2d at 609.  Accordingly, the Court need not address whether Plaintiff satisfied Rule 15(a)(2)'s standard for amending the complaint.

## V.      Conclusion and Recommendation

For the reasons discussed, it is HEREBY RECOMMENDED that Plaintiff's motion for leave to file third amended complaint, (ECF No. 40), be DENIED.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1).  Within **fourteen (14) days** after being served with these Findings and Recommendations, the parties may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  **Objections, if any, shall not exceed fifteen (15) pages or include exhibits.  Exhibits may be referenced by document and page number if already in the record before the Court.  Any pages filed in excess of the 15-page limit may not be considered.**  The parties are advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 838–39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   __**May 27, 2026**__                    ___/s/ *Barbara A. McAuliffe*___
                                                                UNITED STATES MAGISTRATE JUDGE

10